[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 83 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
The only point I deem it necessary to consider is that relating to the competency of the evidence of Briggs as to the iron railing. From the manner in which the facts are stated in the bill of exceptions, it is not very clear for what purpose this evidence was received. The prisoner was indicted for receiving twenty-two bars of pig-iron, *Page 86 
knowing them to have been stolen; and it is claimed by the counsel for the prisoner that the evidence given of receiving the iron railing was incompetent, as evidence, either to show thescienter, or for any other purpose, upon the charge in the indictment.
The counsel for the people insists, in the first place, that the evidence was not offered or received for the purpose of proving guilty knowledge, but for other proper purposes; and in the next place, that it was competent for that purpose. It is necessary to refer to the record for what took place upon the subject. In the first place, the witness, Briggs, stated that he manufactured a railing for Vincent-street bridge the winter before, and that he had a conversation with the defendant about the first of February. The defendant's counsel objected to the conversation, and the district attorney stated the object to be to show defendant's business and his purchasing iron. The prisoner's counsel renewed the objection upon the ground that it referred to other iron than that charged in the indictment. The court remarked that it might be admissible to show guilty knowledge. The district attorney then stated that he expected to show that the defendant admitted that he knew the source of the iron he bought, but did not limit it to the iron in the indictment; and the court said, under that view, the evidence was admissible. Up to this time it did not expressly appear that Briggs had lost any iron, or that defendant had received any of his iron; and yet, from the objection and ruling it may be inferred that the court intended to admit the conversations as to other iron than that charged in the indictment. Taken together I do not see how any other construction can be given to it. The witness then detailed another conversation which he had with the prisoner about the iron in question, in March, after which he returned to the conversation first spoken of, about the first of February, and was permitted to give it, under objection. Upon the cross-examination of this witness as to these two conversations, he stated that the first one was *Page 87 
about some railing he had lost and found in prisoner's building, and stated the circumstances under which he had found it, and what the prisoner said. The district attorney then asked the witness to describe the pieces of iron railing. This was objected to, and the district attorney stated that he had only asked the question to show that it was not part of the iron in question. The court said he would admit it for that purpose, and the prisoner excepted. The witness described the railing and number of pieces taken. During the trial, the prisoner called a witness who was present when some of the Briggs iron was brought in by the boys, and received by the prisoner, and gave evidence of facts tending to exculpate him from the charge of guilty knowledge in receiving that iron, although not conclusive. The facts stated by this witness were admitted to be true by the district attorney. The prosecution then called one Williams, who was allowed to testify, under objection, that he saw boys bring a piece of the railing at another time, in the evening, to the prisoner's store, when the latter was absent, which was afterward taken by Briggs. The court in its first ruling decided to admit a conversation as to other iron than that charged in the indictment, although the witness, in giving the conversation upon the direct examination, did not state any facts about losing railing or finding it in the prisoner's store. On cross-examination he stated the facts about the railing in connection with the conversation, and the court permitted the district attorney to give evidence of circumstances tending to criminate the prisoner as to that iron, but ostensibly to distinguish it from the iron specified in the indictment.
It is claimed that this evidence was competent for that purpose, and also because the facts as to the loss of the railing, and finding it, had come out on cross-examination. It was entirely unnecessary for the purpose of distinguishing it from the iron in the indictment — that was pig-iron, in bars, claimed to belong to Burke Co. The witness, Briggs, had twice stated that the conversation about the first of February related to a different matter, had spoken of the railing as part *Page 88 
of that which he had manufactured for the Vincent-street bridge, and had distinctly kept the two things separate. There was no claim or pretence that the railing was a part of the iron described in the indictment, and the description itself conclusively established that it could not be the same, It was therefore entirely unnecessary and useless to admit the evidence for that purpose. If there had been an excuse for showing the fact, the general question whether it was the same iron would have been the most appropriate way. The practice of calling out evidence for one purpose, apparently innocent, and using it for another, which is illegal, is improper; and, if it is clear and manifest that the avowed object is colorable merely, its admission is error. It was idle and frivolous to put in this evidence for the purpose avowed, while its influence could not be otherwise than damaging to the prisoner. Indicted for receiving twenty-two bars of pig-iron, the facts proved, under the pretence of distinguishing between that and manufactured iron railing, tended very strongly to prove the prisoner guilty of a different crime from that charged.
This railing was manufactured and stored near the prisoner's place of business, where he had daily opportunity of seeing it, and its shape, dimensions and character were far more indicative that it had been stolen than a bar of pig-iron, which might be picked up in the canal or elsewhere. It was improper, under the circumstances, to receive it for the avowed purpose for which it was received; but if it was competent for any other purpose, the exception is not tenable. It is said that it was competent, because the prisoner had gone into the subject in cross-examination. I infer that the facts which came out were elicited by a legitimate cross-examination as to the conversations called out on the direct examination. The witness merely stated the fact that he lost the railing, and where he found it, and what Coleman said at the time, or soon after; which was the same conversation spoken of by him on his direct examination. If this was so, it furnished no ground for the prosecution to take up *Page 89 
the prisoner's connection with the railing as a substantive accusation against him, or to prove facts tending in that direction. It was not claimed that the district attorney was entitled to this evidence because it had been gone into by the prisoner, which would have been more plausible, if true, than the claim that was made for its introduction. It is said that the facts drawn out on cross-examination were of an exculpatory character as to the railing, and this gave the prosecution the right to give evidence to criminate him. I cannot assent to this proposition. If a prisoner upon trial for one offence does call out facts, on cross-examination, without objection, tending to show that he is not guilty of another offence, this does not justify evidence on the part of the prosecution to prove that he is guilty of the other offence. The accused can only be tried for the crime charged; and this rule cannot be abrogated by evidence which may have been called out in relation to another crime. If a person on trial for stealing a horse gives evidence, without objection, that he did not on some other occasion steal other property, it would not be competent for the prosecution to introduce evidence that he was in fact guilty of the other crime; and especially not, if the evidence as to the other property came out incidentally upon cross-examination. A party does not acquire the right to give immaterial evidence because his adversary has done the same thing. The rule involved would apply when a party had given secondary evidence of a material fact, but does not unless the evidence itself is material. Otherwise, the parties could make every trial interminable, by litigating collateral questions.
But neither of these grounds were urged for the introduction of the evidence of Williams as to the Briggs iron; nor could it be received upon either ground. It had been fully described before, and this was evidence in reply to the exculpatory evidence which had been given by the prisoner as to that iron. It was received under a general objection, for no specified purpose, and it must be assumed that it was received as competent upon the main issue, and this is confirmed by the first ruling made, that such evidence was competent to *Page 90 
prove guilty knowledge. It is said that this evidence did not injure the prisoner. To obviate an exception upon this ground it must appear clearly that the evidence could not have been injurious. The receiving of this iron by the prisoner had been fully litigated upon both sides. Both the prosecution and defence had put in evidence in relation to it; the former to show that the prisoner knew that it was stolen, the latter to disprove his guilty knowledge by proving the circumstances under which some of it was received. This evidence was given in reply, and it tended to strengthen the accusation against the prisoner in respect to this iron.
The circumstance that boys brought pieces of iron railing to the prisoner's store in the evening, although in his absence, which had been stolen from Briggs, which were afterward found in the prisoner's possession and taken by Briggs from there, was a circumstance of suspicion as evidence of criminal complicity against him. The witness could not swear that these boys were the same as those who delivered the other pieces to the prisoner, and the explanatory evidence as to them would not therefore apply. At all events, we cannot say that this evidence did not injure the accused.
We think that this evidence was regarded by the court as competent upon the question of scienter; and all the evidence as to the Briggs iron must be justified, if at all, on this ground. The general rule is against receiving evidence of another offence. A person cannot be convicted of one offence upon proof that he committed another, however persuasive in a moral point of view such evidence may be. It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It would lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidence of several offences to produce conviction for a single one. There are, however, some exceptions to this rule when guilty knowledge is an ingredient of the crime; and the question is, *Page 91 
whether this evidence falls within any recognized exception.King v. Dunn Smith (1 M.C.C., 146) is a leading authority upon the subject. One of the prisoners stole a large number of articles of property from the prosecutors, and delivered them to the other, some of which the latter still retained in her possession, and some she had pawned at different places; and the prosecution having elected to proceed for receiving two specified articles, the court held that the receipt of other articles prior to the receipt of those might be shown. The report says: "As all the property had been stolen from the same persons and had all been brought to her by the prisoner, Dunn, the learned judge thought it was admissible and proper to be left to the jury as an ingredient to make out the guilty knowledge." In Rex v. Davis
(C.C. P., 341) the same facts existed; the articles were all stolen from the same person and delivered to the receiver by the same thief, though at different times, and the same ruling was made. It is unnecessary to say that all these qualifications must exist; but to warrant the introduction of such evidence there must be such a connection of circumstances as that a natural inference may be drawn, that if the prisoner knew one article was stolen he would also be chargeable with knowledge that another was. In this case it appeared, by the testimony on the part of the prosecution, that boys were in the habit of picking up iron from the canal and other places, both pig and scrap iron, and that it was customary for other men engaged in the iron business to purchase it: and it was not claimed that all the iron purchased by the prisoner of the boys was stolen; nor does it appear that all the pieces of the Briggs iron were received from the same persons from whom this pig-iron was received, especially as to the last piece brought in the evening. The Briggs iron had no connection with the pig-iron; it was taken from another place, belonged to another person, was of a different character, and received at another time, and, for aught that appears, some of it from different persons. Assuming, therefore, that the prisoner received the Briggs iron and was chargeable with knowledge *Page 92 
that it had been stolen, would that circumstance logically or legally charge him, or tend to charge him, with knowledge that the pig-iron was also stolen? We think it would be carrying the exception too far, and beyond the authorities to so hold, and would be a dangerous innovation upon the general rule. Every case must depend upon its own circumstances; but when it appears that a person is in the habit of buying different kinds of iron, some of it legitimately and honestly, the wrongful act in receiving one article is not competent to prove a criminal intent in receiving another, differing in time, kind of property, the person from whom stolen and the person from whom received.
Although there was other evidence of guilty knowledge, we have no means of determining that it would have been deemed sufficient by the jury without this, and the prisoner must, therefore, have a new trial.
Judgment reversed, and new trial ordered.
CHURCH, Ch. J., ANDREWS and RAPALLO, JJ., concur; GROVER and FOLGER, JJ., dissent, upon the ground that the admission of the evidence as to the Briggs iron may be justified, independent of its competency, upon the ground for which it was offered, i.e.,
to distinguish it from the iron described in the indictment; but they agree with the opinion that such evidence was incompetent for the purpose of showing guilty knowledge as to the iron set forth in the indictment.
Judgment reversed. *Page 93