**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph IACULLO, Defendant-Appellant.**

**No. 11496.**

United States Court of Appeals Seventh Circuit.

Nov. 4, 1955.

Rehearing Denied Nov. 25, 1955.

Maurice J. Walsh, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Edward J. Calihan, Jr., John Peter Lulinski, Anna R. Lavin, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant Joseph Iacullo has appealed to this court from a judgment based upon a finding of guilty in a case tried without a jury. He was sentenced to 5 years on each count in which he was named in an indictment, to run concurrently, and fined $100.

The indictment also named Anthony Schullo, Anthony Sperna and Anthony Ponzi, as defendants. Iacullo, with Sperna, is charged in counts 7, 8 and 9, with illegal purchase, sale, and receiving, concealing, buying and facilitating the transportation, of narcotics, on July 23, 1953, and, in counts 13, 14 and 15, only Iacullo is charged with similar unlawful acts on December 9, 1953. In count 16, Iacullo, Schullo, Sperna and Ponzi are charged with conspiring with Frank Coduto and Anthony Pape, then deceased, and with unknown persons, to commit offenses against the United States, to wit: unlawful purchase of narcotic drugs, unlawful sale to Harry V. Mattera of quantities of a narcotic drug, and unlawful receipt, concealment, buying and facilitation of transportation and concealment of narcotic drugs, and the commission of the offenses set forth in the first fifteen counts of the indictment, including the six counts naming Iacullo, the conspiracy being alleged to have commenced on or about July 16, 1953, and to have continued to on or about March 16, 1954.

Ponzi was granted a severance, Schullo pleaded guilty as to three counts and was dismissed as to the others in which he is named, and Sperna pleaded guilty to count 9 and was dismissed as to the other counts naming him.

Before us, Iacullo contends that the total evidence does not sustain his conviction, that the district court erred in admitting and considering certain evidence and that mere association is not a basis for conviction.

There is evidence, some of it contradicted and some of it uncontradicted, tending to prove facts which we now set forth chronologically.

Harry V. Mattera, an agent of the Federal Bureau of Narcotics, on July 23, 1953, parked a Cadillac automobile in a parking lot at the southeast corner of Van Buren and Paulina Streets, in Chicago. At about 6:30 p. m. Mattera met Coduto at said street intersection and told him that he desired to purchase two ounces of heroin and that he had $800 which Coduto said was necessary to pay for it. Coduto told Mattera to accompany him to the corner drug store, known as the College Pharmacy, where Coduto said, "I'll have to give the fellows a call." Mattera gave Coduto $800, whereupon Coduto went to the rear of the store and made a telephone call. Coduto thereupon left the store with Mattera. Coduto told Mattera that the delivery would be made about 8:30 p. m. Mattera waited in a tavern until that time and then rejoined Coduto on the street. Coduto said the delivery would be made shortly. A few minutes later he pointed to Mattera's automobile and said, "There they are now." A 1949 Plymouth car was entering the parking lot. It pulled up parallel to the Cadillac. Sperna, the driver, threw a package into or through the Cadillac. Iacullo was seated next to the driver. The Plymouth was driven out of the lot and around the immediate vicinity, and south to Congress Parkway, thence into a dead end street, where Sperna turned the car around and drove again to Van Buren and Paulina Streets and then north. Mattera walked into the parking lot, looked inside the Cadillac, then got

out of the car and bent over and picked up a small package which was wrapped in newspaper and had two manila containers inside it containing heroin hydrochloride, a derivative of opium. Neither the containers nor the newspapers contained federal tax stamps and Mattera did not give an order form for the purchase of narcotics.

On August 13, 1953, Mattera told Coduto that he desired to purchase two more ounces of heroin, but Coduto said that the order could not be filled "because the fellows were out of town." Mattera asked what fellows he meant and Coduto said, "The fellows that were in the car the other day, the other time."

On September 18, 1953, about 7:30 p. m., Mattera had another conversation with Coduto in the same drug store [1] and there gave Coduto $800. Mattera went to a restaurant at Ogden Avenue and Madison Street where he saw Anthony Schullo about 11:15 p. m. Schullo made a phone call and left the restaurant. About 11:30 p. m. Coduto entered the restaurant and gave Mattera a Chicago newspaper dated September 19, 1953 in the folds of which Mattera found an envelope containing heroin, but bearing no tax stamps. William J. Sheehan, a special investigator for the government, found one fingerprint on the newspaper that agreed with an impression of the right index finger of Iacullo taken by Sheehan when Iacullo was brought to the Narcotics Bureau under arrest on March 16, 1954.

On October 13, 1953, Mattera was seated in a booth in the College Pharmacy with Coduto and Schullo. Mattera told Coduto that he was dissatisfied with his methods of transacting business and that he refused to do any further business with him. Schullo said to Mattera "Well, don't bother, from here on in, I will take care of you,—I will take care of your needs." Mattera told Schullo that he wished to purchase some narcotics and Schullo made a telephone call from the rear of the store, where-upon he returned and told Mattera that "his connection" would be there about 9 o'clock. The first time that Mattera had seen Anthony Pape was about 8:45 p. m. when Pape was going through the revolving door into the street. Schullo then left Mattera's presence for about 5 or 10 minutes.

On October 14, 1953, about 9 a. m., Mattera met Schullo and Coduto in the College Pharmacy and Mattera then gave Schullo $800. Mattera and Coduto entered Mattera's automobile. Narcotics Bureau agent Durham, in his car, followed by Schullo in a 1949 Plymouth sedan, took a position behind Mattera's car and the three automobiles proceeded to the Ogden Avenue and Jackson Boulevard service station into which Mattera and Coduto turned. Schullo continued west on Jackson Boulevard for a short distance and Durham continued driving west, ahead of Schullo. In his rear view mirror, Durham saw Schullo make a U-turn and drive back east to the service station. Durham made a U-turn. Schullo drove into the station beside Mattera's car. Schullo left his car and joined Mattera and Coduto after which Mattera entered the men's room, where he obtained a package containing narcotics, which was secreted under a wash basin in the station. He then left the station alone in his car. Coduto and Schullo entered Schullo's car and drove to Van Buren and Paulina Streets where the car was parked. Coduto left the car and Schullo was then joined by Iacullo. They sat in Schullo's car for 2 or 3 minutes after which Schullo drove the car south on Paulina Street and turned east into Taylor Street where the car was again parked. Schullo and Iacullo talked in the car for 10 or 15 minutes after which Sperna walked along the street from his nearby home. Iacullo then left the car and approached Sperna and a conversation took place. Iacullo waved his hand to Schullo after which the latter drove his car away. Iacullo remained with Sperna. They went to a

---

1. This transaction is not covered specifically by the indictment.

luncheonette at Ashland Avenue and Taylor Street. They had on numerous occasions visited this luncheonette where they conversed with each other and Iacullo talked to many other persons there.

The first time Mattera spoke with Pape was on November 28, 1953 in a tavern. On December 9, 1953, they talked on the telephone and at 8 p.m. that day they met near Ferdinand and Hamlin Streets, where Mattera received a package containing narcotics from Pape and gave him $1,650. The outer wrapping of the package was a half sheet of a newspaper wrapped around two envelopes, and encircled by a rubber band. This half sheet of newspaper contained two fingerprints of Iacullo identical with his prints later taken on March 16, 1954.

None of the packages which Mattera obtained in any of the transactions referred to herein bore federal tax stamps.

On February 18, 1954, about 9 a.m., an automobile driven by Sperna stopped near the premises at 1620 Roosevelt Road and Iacullo got out of the car, entered said premises, reappeared in five or ten minutes, entered Sperna's car and left. Ten or fifteen minutes thereafter Pape came out of said building, entered a car and left the vicinity. Mrs. Pape, the mother of Anthony Pape, lived in the second floor apartment, the mail box for which bore the name of James Pape. The telephone there was registered in the same name. The building had other entrances under different street numbers.

There is a dispute in the evidence as to what occurred at the Bureau of Narcotics when Iacullo's fingerprints were taken by Sheehan on March 16, 1954, following his arrest. Iacullo testified that he asked why he was under arrest and stated that he did not want his "prints" taken. He was told that "it is customary when you are under arrest." He said that the United States marshal read the charge to him the next morning. Government witnesses testified that a warrant had been issued for the arrest of Iacullo but that it was not in the possession of the agents when the arrest was made. There was no physical force used to procure Iacullo's fingerprints. Sheehan testified that Iacullo made no objection when asked to come to the stand for fingerprinting. Agent Cass testified that when brought in to have his fingerprints taken Iacullo did not object and was not handcuffed.

■ 1. (a) Defendant contends that the taking of Iacullo's fingerprints on March 16 violated the constitutional provisions against unlawful search and seizure and self incrimination.

He relies upon the dissenting opinion in United States v. Pisano, 7 Cir., 193 F.2d 361, at page 365. However, the majority opinion holds, at page 363, that, under the Fourth Amendment of the constitution of the United States, "If the arrest is valid then a search of the immediate premises where the defendant is arrested is reasonable."

In the case at bar, Iacullo had been validly arrested under a pending warrant and he was in custody when his fingerprints were taken. There was sufficient evidence to indicate that he did not in any way object when requested to permit his fingerprints to be taken.

Defendant relies principally upon United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. However, in that case the decisive evidence upon which defendant was convicted of knowingly possessing counterfeit gasoline ration coupons in violation of § 301 of the Second War Powers Act, 1942[2], was that obtained by search of his person, after he was arrested without a warrant of any kind. The court, speaking of the defendant, said 332 U.S. at page 587, 68 S.Ct. at page 225:

"If he was lawfully arrested, it is not questioned that the ensuing search was permissible."

In the case at bar, Iacullo was lawfully arrested before his fingerprints were

2. 50 U.S.C.A.Appendix, § 633.

taken. A warrant had theretofore been issued for his arrest and the morning following his arrest the marshal read the warrant to him.

In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, one in custody on a charge of murder objected that evidence that he put on a blouse and that it fitted him, was inadmissible because he had put the blouse on under duress. However, 218 U.S. at page 252, 31 S.Ct. at page 6, the court in rejecting the contention, said:

"But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof."

We hold that under the circumstances proved, Iacullo's constitutional rights were not violated when his fingerprints were taken and at the trial used as a basis for comparison with fingerprints found on newspapers used to wrap narcotics.

(b) Defendant objected at the trial to the introduction of evidence concerning the transaction on September 18, 1953, because he contends that "the indictment gives no notice of any such offense or occurrence by any allegation of act or deed, other than the general charge of conspiracy." He claimed surprise upon the offer of this proof. However, the court admitted it. He argues that the only evidence connecting him with that transaction was the presence of his fingerprint upon the newspaper used concealing the narcotics which Coduto sold to Mattera. His counsel admits that the government gave notice by delivering a photograph of a fingerprint to defendant's counsel prior to the trial, which bore the inscription "on Septem-

ber 18, 1953, Pinna and Coduto," and also "middle finger—RT. Hand." There was no surprise.

A complete offense was proved to have been committed on September 18, 1953. Iacullo was not charged with or found guilty of that offense. However, the similarity of the manner in which that offense was committed, being in remarkable conformity to the pattern of other transactions which were involved in the conspiracy charged against him, made this evidence admissible.

As a general rule, upon the trial of an accused person, evidence of another offense, wholly independent of the one charged, is inadmissible. As was said in Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85, at page 87, this rule is subject to some well established exceptions. For instance, such evidence is admissible if it is so related to or connected with the crime charged as to establish a common scheme or purpose so associated that proof of one tends to prove the other, or if both are connected with a single purpose and in pursuance of a single object; as well as to establish identity, guilty knowledge, intent and motive.

As to the conspiracy count, proof of the September 18, 1953 offense was admissible as corroborative of other evidence received to prove that count, because the pattern of that transaction bore a strong resemblance to the pattern of other transactions proved to have taken place in carrying out the conspiracy. The evidence as to September 18, 1953, was cumulative, as well as corroborative. In addition to that, the presence of Iacullo's fingerprint in the September 18, 1953 transaction was also admissible as tending to show his participation in the acts stated in count 16 to be objects of the conspiracy. For instance, the December 9, 1953 transaction also involved Iacullo's fingerprints[3]. He disclaims any criminal connection with that event. The evidence of Sep-

3. Iacullo has never disputed that any of the fingerprints in evidence are his.

tember 18, 1953 tends to rebut that contention.

■ (c) Defendant also contends that the district court erred in admitting evidence of conversations out of the presence of Iacullo, referring particularly to the conversation related by Mattera as having occurred on August 13, 1953, between him and Coduto (who, like Pape, was overtaken by death before the trial), at which time Coduto said he could not fill Mattera's order for narcotics "because the fellows were out of town" meaning "The fellows that were in the car the other day, the other time."

When this evidence was received, the government had already proved a *prima facie* case of conspiracy as charged in count 16. For that reason this evidence was admitted by the district court. We believe that the court was not in error in so doing. See Braatelien v. United States, 8 Cir., 147 F.2d 888, at page 893, where the court said:

"Upon the trial several farmers testified that when Bergen solicited them to file petitions under the Act with Braatelien he, Bergen, made statements which, if true, implicated Braatelien in the conspiracy. All such declarations were objected to as hearsay because made in the absence of Braatelien. * * * It is the law, also, that when a conspiracy is established *prima facie* everything said or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said or done by every one of them, and is admissible against each of them. 11 Am.Jur., Conspiracy, § 40. The declarations of each of the parties is a part of the *res gestae*. Wiborg v. United States, 163 U.S. 632, 657, 16 S.Ct. 1127, 1197, 41 L.Ed. 289. Each conspirator is in law a partner and agent of every other member of

the conspiracy. Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260, L.R.A.1918C, 497, Ann.Cas.1918B, 461."

■ 2. The burden was upon the government to prove the conspiracy charged in count 16 by either direct proof or circumstantial evidence, or both.

As direct proof, it introduced the sworn testimony of witnesses indicating that illegal sales of narcotics were made by the alleged conspirators Coduto, Sperna, Schullo and Pape, each always acting in concert with some of the others named. In addition, direct evidence also showed Iacullo's repeated appearances with various of the alleged co-conspirators under circumstances from which it could be reasonably inferred that he was actively engaged in the furtherance of the conspiracy. For instance, it was proved that on July 23, 1953, as a Plymouth car was driven alongside a government agent's Cadillac in the parking lot, Coduto, who had that evening arranged for the sale of narcotics to the agent, pointed toward the Cadillac and said, "There they are now," and that Iacullo was present in the car with Sperna when the latter made the delivery in a highly suspicion-invoking manner and while Sperna drove around in the vicinity of the place of delivery with the obvious purpose of observing that the package was picked up. On October 14, 1953, when Schullo, with Coduto in his car, parked it, Coduto left and Iacullo entered the car. Schullo then drove to a point near Sperna's home and Schullo and Iacullo talked in the car until Sperna appeared. Iacullo left the car and joined Sperna for a conversation, waving to Schullo who thereupon drove away. Iacullo and Sperna then went to a luncheonette. On February 18, 1954, Sperna drove Iacullo to the building where Pape's mother lived [4], and Iacullo

4. Defendant contends that this evidence was inadmissible because this occurred "some 60 days after the completion and

attainment, so far as any proof is concerned, of any object of the conspiracy, as laid in the indictment." This objec-

entered the building. Ten or fifteen minutes after he returned to Sperna's car and was driven away, Pape came out of the building.

Circumstantial evidence tending to indicate that Iacullo handled the newspaper wrappings of the deliveries made pursuant to two of said sales was introduced in the form of testimony that his fingerprints appeared thereon.

After the government had laid a foundation by establishing a *prima facie* case of conspiracy, the district court received direct testimony that on August 13, 1953, Coduto explained that he could not then fill an order for heroin because "the fellows that were in the car the other day, the other time" were out of town.

■ It is the contention of defense counsel that, despite the foregoing evidence, Iacullo was innocent of any participation in the sales of narcotics. Indeed that is the tenor of Iacullo's testimony at the trial. It became a question of fact for the district court to determine whether the direct evidence and the reasonable inferences to be drawn from the circumstantial evidence were to be accepted as guilt of Iacullo or his testimony to the contrary was to be accepted. The court, who observed Iacullo and the other witnesses testified, was in a better position than we to determine this question. We cannot say that the court was in error in coming to the conclusion that the evidence proved him guilty beyond a reasonable doubt. Iacullo's repeated personal appearances with those then engaged in executing the conspiracy, together with fingerprint evidence that he personally handled the wrappings of narcotics illegally peddled by the conspirators, he now attempts to explain on the theory of innocent coincidence. We reject that explanation, as did the district court.

■ In reviewing the record we may not weigh the testimony or determine the guilt or innocence of Iacullo. We must take that view of the evidence most favorable to the government to sustain the finding of the district court, there being substantial evidence to support it. In Braatelien v. United States, 8 Cir., 147 F.2d 888, at page 893, the court said:

"The existence of the conspiracy and the participation of the defendants need not be established by direct proof. Circumstantial evidence is sufficient when the facts and circumstances are such as legitimately tend to sustain an inference of their existence. '* * * generally, direct proof of a criminal conspiracy is not available and it will be disclosed only by a development and collocation of circumstances.' United States v. Manton, supra, 2 Cir., 107 F.2d 834, at page 839."

The existence of the conspiracy and the participation of Iacullo therein are established by proof, both direct and circumstantial. The evidence supports the finding of guilty on count 16 and the judgment thereon.

■ 3. We find it unnecessary to consider any question as to the sufficiency of the evidence to support the conviction of Iacullo under the six counts charging him with substantive offenses, inasmuch as the sentences imposed upon him on each of said counts and on the conspiracy count were the same and were ordered to run concurrently. In Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 18, 63 L.Ed. 1173, at page 1176, the court said:

"We shall not need to consider the sufficiency, under the rule just stated, of the evidence introduced as to all of the counts of the indictment, for, since the sentence im-

tion is not well taken because the conspiracy charged in the 16th count was a joint venture continuing until March 16, 1954, when the conspirators were arrested.

The February 18, 1954 occurrence was incidental to the carrying out of the conspiracy itself and proof thereof was admissible.

posed did not exceed that which might lawfully have been imposed under any single count, the judgment upon the verdict of the jury must be affirmed if the evidence is sufficient to sustain any one of the counts. Evans v. United States, 153 U.S. 608, 14 S.Ct. 939, 38 L.Ed. 839; Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966; Debs v. United States, 249 U.S. 211, 216, 39 S.Ct. 252, 63 L.Ed. 566."

To the same effect are Sinclair v. United States, 279 U.S. 263, at page 299, 49 S.Ct. 268, 73 L.Ed. 692, and Brooks v. United States, 267 U.S. 432, at page 441, 45 S.Ct. 345, 69 L.Ed. 699.

For the reasons herein stated, the judgment from which Iacullo has appealed, is

Affirmed.

FINNEGAN, J., concurs in the result.