**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Barney GRABIEC, Defendant-Appellant.**

**No. 76–2224.**

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1977.

Decided Sept. 2, 1977.

Edwin B. Grabiec, Joliet, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Mary Stowell, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and BAUER, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant-Appellant, former Illinois Director of the Department of Labor, was convicted on 22 October 1976 of conspiracy to extort money under color of official right from employees of Crown Personnel, Inc., in violation of 18 U.S.C. § 1951. Also tried and convicted with him was Gerald Wall, former Superintendent of the Division of Private Employment Agencies. Defendant

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

Grabiec filed his Notice of Appeal on 9 December 1976.

On 6 March 1972, Local 1114 of the United Electrical Radio Machine Workers of America struck Honeywell Company. During the eight-week strike, Crown Personnel, Inc., sent 150–180 production personnel to Honeywell to replace the striking workers. Illinois law requires that employment agencies give written notice of any labor disputes to all job applicants before sending the applicant to any place of prospective employment. On 12 May 1972, the Union filed a complaint with the Illinois Department of Labor charging Crown with violating Chapter 48, Section 197(g) of the Illinois Revised Statutes because the notice of the labor dispute had not been given.

Defendant Gerald Wall held an informal hearing on the complaint on 9 June 1972. Apparently Crown Personnel, Inc., admitted its violation and the Union demanded a revocation of Crown's license. The hearing was continued without formal action. A formal hearing originally scheduled for 16 June 1972 was continued until 4 August 1972. A hearing was held on 4 August 1972 and at the conclusion Wall took the matter under advisement pending a discussion of the matter with Grabiec. Grabiec met with Union representatives on 14 August 1972 and informed them that revocation would be too severe a sanction and that he believed a 9-day suspension would be appropriate. On 24 August 1972 Crown was given notice that the penalty imposed was ten days suspension and two years supervision. Although a penalty was imposed, no suspension dates were imposed and Crown was never closed for its violation of the law.

At trial, William Organ, owner of a private employment agency and a friend of Daniel Hyland, president of Crown, testified that he played golf with Grabiec at the Cog Hill Country Club on 15 June, six days after the initial hearing. The charges against Crown were discussed and Organ testified that Grabiec told him that something could be done to help Crown for the sum of $1,500.00 to $2,000.00. According to Organ, after he related this to Daniel Hy-

land, Hyland stated that they would be willing to pay $700.00. Wall apparently rejected this amount.

Further negotiations were pursued through a Mr. Thomas Moran, an owner and manager of another private employment agency. After talking with Wall, Moran contacted Conrad Cairns, vice president and part-owner of Crown. With Moran acting as the middleman and the proverbial bagman, a figure of $2,500.00 was agreed upon and was delivered to Wall by Moran on behalf of Hyland and Cairns. As part of the *quid pro quo*, Crown received a token penalty that was generously never actually enforced.

## SUFFICIENCY OF THE EVIDENCE

■ Defendant first maintains that the Government failed to prove his guilt beyond a reasonable doubt. He stresses that direct evidence of his participation in the scheme was established by only one witness, William Organ. Organ's credibility is questioned on a number of grounds. Defendant also points to Organ's contradictory testimony and a number of witnesses who testified on his behalf.

■ It is a well established principle that when the sufficiency of evidence in a criminal conviction is questioned, the reviewing tribunal must examine the record taking a view most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It is not our prerogative to retry the case, weigh the evidence, or assess the credibility of witnesses. *United States v. Miles*, 401 F.2d 65, 67 (C.A.7 1968). The verdict will not be disturbed if substantial evidence and reasonable inferences therefrom support the action of the jury. *United States v. Isaacs*, 493 F.2d 1124, 1146 (C.A.7 1974).

■ Keeping these principles in mind, we have reviewed the record of the trial. Organ was unquestionably the most damaging witness to Grabiec, and he was extensively cross-examined about his implicating remarks. Organ's testimony was corroborated in many respects by Hyland. Al-

though there are reasons offered why a jury might have refused to accept Organ's account of the relationship with Grabiec, the jury in this case apparently resolved the questions of credibility in favor of Organ. It is well recognized that "established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury". *Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966). We conclude that the evidence as to Grabiec was not insufficient as a matter of law.

## EVIDENCE OF OTHER CRIMINAL OFFENSES

Over defendant's objections, William Broome and Ronald Van Matre testified concerning offenses involving co-defendant Gerald Wall. Both Broome and Van Matre were also engaged in the employment agency business. Broome testified that he had paid $200.00 to Moran to give to Wall in September 1970 (Tr. 321, 322) in order to get a license. Van Matre testified that he also paid $200.00 to Moran for the acquisition of a license in January 1973 from Wall's office (Tr. 484–493). Moran corroborated both the Broome (Tr. 406–408) and Van Matre (Tr. 408–414) payoffs in his testimony.

At trial Moran also testified regarding two (2) payoffs he himself made to Wall in connection with obtaining licenses for his own employment agencies, Career La Grange Personnel in 1969 (Tr. 397–401) and Career Professionals, Inc., in the summer of 1972 (Tr. 401–402). This testimony was also elicited over the objections of defense counsel for Mr. Grabiec.

■ Defendant argues that the admission of testimony regarding the four transactions mentioned above constituted reversible error on the grounds that they are offenses wholly independent of the offense charged. Evidence of other criminal activities is inadmissible as a general rule unless it fits into several well established exceptions. *United States v. Iacullo,* 226 F.2d

788, 793 (7 Cir. 1970), *cert. denied,* 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839 (1956). Admission of such evidence is a discretionary task which involves a weighing of the evidence. As this court stated in *United States v. Pate,* 426 F.2d 1083, 1086 (C.A.7 1970):

It has often been stated, as a general rule, that evidence of prior criminal acts of an accused which are not charged in an indictment is inadmissible [*e. g., United States v. Fierson,* 419 F.2d 1020 (7th Cir. 1969); *United States v. Menk,* 406 F.2d 124 (7th Cir. 1968), cert. denied, 395 U.S. 946, 89 S.Ct. 2019, 23 L.Ed.2d 464 (1969)]; but the true general rule is not nearly so broad. Evidence of other criminal activities is clearly admissible if it is relevant to indicate motive or some other element of the crime charged, unless minor probative value is outweighed by major prejudicial effect. *E. g., United States v. Fierson, supra; United States v. Marine,* 413 F.2d 214 (7th Cir. 1969). The question on admissibility is, in the first instance, a matter addressed to the discretion of the trial court. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Fierson, supra.*

■ It should be noted that two of the license payoffs (Moran's payoff as to Career Professionals, Inc., and Van Matre's payoff for his agency) both occurred close to the payoff regarding Crown's violation. Van Matre stated in his direct examination that he discussed his transaction with Wall "the early part of January 1973" (Tr. 485). Moran, however, claimed that he had conversations with Van Matre in the "latter part of '72" (Tr. 409). Moran also stated that his conversation with Wall as to Career Professionals, Inc., occurred in "the early summer of '72" (Tr. 402).

The defendant would have us believe that the conspiracy terminated upon the imposition of the penalty in August of 1972. The Government maintains that the conspiracy continued until 1975. Although we decline to fix a precise date for the conclusion of the conspiracy, it is clear that the conspiracy continued sometime after the imposi-

tion of the penalty in August because the penalty was never enforced. The notice dated August 23rd stated "Commencement of the penalty date to be designated by the Honorable Barney J. Grabiec, Director of Labor" (Tr. 150, 525). We conclude that the two transactions were conducted during the life span of the conspiracy and cannot be characterized as subsequent criminal acts. Although they are not charged as criminal acts in the conspiracy, the trial court did not abuse its discretion in admitting them.

 Neither do we believe that it was error for the court to have admitted evidence of the Broome and Career La Grange transactions that occurred in 1970 and 1969. It has been recognized by this court that additional criminal activities may be admitted to show a pattern of conduct corroborating a similar pattern carried out during the conspiracy and a method of operation. *United States v. Iacullo, supra; United States v. Hampton*, 457 F.2d 299, 302 (C.A.7 1972), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (C.A.7 1972). Moran, as middleman and bagman, was a central figure in the conspiracy charged. These challenged transactions, as well as the other two discussed above, illuminated the character of the conspiracy and the extent of the involvement of the participants. The role played by Moran and his *modus operandi* were unquestionably probative matters.

However, during the course of the trial, the jury was instructed on several occasions (Tr. 314, 845) that these other similar acts were not to be used at all in assessing the guilt or innocence of Grabiec. At the conclusion of the trial, the jury was instructed as follows:

> Any evidence relating to alleged transactions involving Broome Technical Agencies, Inc., Van Matre Associates, Career Professionals, Inc., and Career Counselors, Inc., may not be considered by you as evidence that the defendant, Gerald Wall, committed the crime for which he is now on trial or any propensity to commit crime generally or that he is a person of bad character or bad repute for that.

> It may be considered by you only in connection with the elements of the crime for which he is now on trial, a crime which requires an intent, a specific intent to do a certain act, an intent to do that act willfully and knowingly . . . and it may be considered by you to the extent that is shown by the evidence to show that a similar method of operation was employed in the prior crime and it may be considered by you to this extent that is shown by the evidence to show the relationship between Thomas Moran and Gerald Wall.

> This evidence must not be considered by you at all with respect to Barney Grabiec.

(Tr. 891)

 In the light of the nature of the testimony and limiting instructions given by the trial judge, we do not believe that the defendant was so unduly prejudiced as to result in the denial of a fair trial. The trial judge did not abuse his discretion.

## DEFENDANT'S MOTIONS FOR SEVERANCE

 Defendant moved, pursuant to Rule 14 of the F.R.Cr.P., for a severance both before and during the trial (Tr. 398, 361). He contends he was prejudiced by the trial with Wall because the evidence of Wall's guilt was "overwhelming", whereas the evidence against him was "meager". Defendant again makes reference to the evidence of the other offenses involving Wall. He concludes that he was not accorded the separate consideration he deserved because of a "spillover effect" and that his conviction resulted from a transference of guilt by association.

The disposition of a Rule 14 motion alleging prejudicial joinder of defendants is a matter clearly directed to the discretion of the trial court. A reversal of a conviction because of a denial of severance will be resorted to "only if abuse of discretion is shown". *United States v. Pacente*, 503 F.2d 543, 546 (C.A.7 1974). A clear showing of prejudice must be established and the mere

showing of disparity of incriminating evidence will not be sufficient. As this court has previously emphasized in *United States v. Tanner*, 471 F.2d 128, 137 (C.A.7 1972):

> A defendant bears the burden of demonstrating that he has been prejudiced by the joinder; that burden is a difficult one. "The defendant must show something more than the fact that 'a separate trial might offer him a better chance of acquittal.'"

Although the evidence of culpability was clearly proportionately greater against Wall than Grabiec, we have pointed out earlier that there was sufficient evidence for a jury to have convicted Grabiec. Also, we have emphasized that the jury was repeatedly instructed to consider evidence regarding other transactions only as it applied to Wall. Under these circumstances, the denials of Grabiec's request for severance were not errors.

## REMARKS IN THE PROSECUTOR'S CLOSING ARGUMENT

Lastly, the defendant claims that the prosecutor made improper and prejudicial remarks which resulted in defendant's not receiving a fair trial. In connection with a stipulation, the government prosecutor stated that he had been "hoodwinked" (Tr. 581) by defense counsel. Defendant also points to the prosecutor's remarks about the grant of immunity to William Organ and his reference to a letter of determination being missing from the Department of Labor file.

Broad discretion is reposed in the trial court to control closing arguments and its discretion in this area will not be overturned absent a showing of clear abuse. *United States v. Bryant*, 462 F.2d 433, 436 (C.A.8 1972). In the heat of dispute, some latitude must be given to lawyers' language as long as he strikes hard blows but not foul ones. *United States v. Odom*, 348 F.Supp. 889 (M.D.Pa.1972), 475 F.2d 1397 (C.A.3 1973), *cert. denied*, 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 (1973). An advocate is to be accorded considerable latitude in replying to his opponent's arguments. *United States v. Lawler*, 413 F.2d 622, 628 (C.A.7 1969), *cert. denied*, 396 U.S. 1046, 90 S.Ct. 698, 24 L.Ed.2d 691.

Having reviewed the remarks in this case, we do not believe that the prosecutor's remarks, when viewed in the light of the entire record, are significant enough to have impaired any substantial right of the defendant. While the prosecutor's remark that he was "hoodwinked" was unquestionably an inartful and undesirable choice of language, it certainly does not reach the level of reversible error. Since the other allegedly improper remarks were even less likely to have prejudiced the defendant, we do not think they need be further discussed.

For the reasons discussed above, the conviction in the district court should be and hereby is AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

The trial court erred, in my opinion, in admitting evidence of four separate criminal acts committed by one of the two charged conspirators. Gerald Wall and Barney Grabiec were charged with conspiracy to extort under the Hobbs Act, 18 U.S.C. § 1951, by charging a "payoff" from Crown Personnel, Inc. to "fix" a violation of Chapter 48, Section 197(g) of the Illinois Revised Statutes.

As the majority opinion indicates, Thomas Moran was the middleman in the alleged plot. Moran testified that he arranged with the vice president of Crown for the payment of $2500 which was delivered to Wall. Thereafter Crown received a token penalty at the hands of Grabiec which was never enforced. Moran was allowed to testify over objection to four other payments to Wall, these in connection with applications for licenses to operate employment agencies: two in connection with his own licenses, a third by William Broome, and a fourth by Ronald Van Matre. There was no evidence that Grabiec was involved in any of these transactions. Broome's and Van Matre's testimony corroborated Moran's concerning the payments of sums of money to Moran, who in turn was to deliver these amounts to Wall.

The majority opinion quotes this court's statement in *United States v. Pate*, 426 F.2d 1083, 1086 (7th Cir. 1970), for the general proposition that evidence of prior criminal acts by an accused is inadmissible unless relevant to show "motive or some other element of the crime charged." The majority then offers an explanation why it was not error to admit evidence of the independent extortive payments to Wall through Moran: "Moran, as middleman and bagman, was a central figure in the conspiracy charged. These challenged transactions, as well as the other two discussed above, illuminated the character of the conspiracy and the extent of the involvement of the participants. The role played by Moran and his *modus operandi* were unquestionably probative matters."

With deference to my colleagues, I suggest that the explanation is oversimplified. Moran was the middleman in the alleged conspiracy to extort money from Crown. That conspiracy involved Wall, Grabiec, and Moran. Moran's role was admitted through his own testimony. The other four transactions which are challenged, however, had to do only with Wall in connection with applications for licenses. They did not tend to show in any manner the character of the conspiracy by either Wall or Grabiec to extort money from licenseholders to "fix" violations. Nor did they in any manner or form show the "extent of the involvement of the participants." These transactions were not similar criminal acts in any true sense of the word. The only claim to similarity is their extortive nature and an involvement by *one* of the alleged conspirators. In all other respects they are quite dissimilar. Their flimsy similarity is not enough, in my opinion, to allow their admission into evidence.

Moreover, the Van Matre transaction did not occur until January 1973, five months after all the operative facts of the alleged conspiracy had occurred. The fact that the notice of the disposition of the Crown violation, dated August 23, 1972, stated, "Commencement of the penalty date to be designated by the Honorable Barney J. Grabiec, Director of Labor," could not by any stretch of the imagination mean that the alleged conspiracy continued beyond August 1972 and into January 1973. Thus the Van Matre transaction was a subsequent criminal act and, for that reason alone, should have been excluded from the evidence.

There can and should be no doubt about the prejudicial effect the challenged evidence had upon both Wall and Grabiec despite the opposite view taken by the majority. On this point the majority says:

However, during the course of the trial, the jury was instructed on several occasions that these other similar acts were not to be used at all in assessing the guilt or innocence of Grabiec. At the conclusion of the trial, the jury was instructed as follows:

"Any evidence relating to alleged transactions involving Broome Technical Agencies, Inc., Van Matre Associates, Career Professionals, Inc., and Career Counselors, Inc., may not be considered by you as evidence that the defendant, Gerald Wall, committed the crime for which he is now on trial or any propensity to commit crime generally or that he is a person of bad character or bad repute for that.

"It may be considered by you only in connection with the elements of the crime for which he is now on trial, a crime which requires an intent, a specific intent to do a certain act, an intent to do that act willfully and knowingly . . . and it may be considered by you to the extent that is shown by the evidence to show that a similar method of operation was employed in the prior crime and it may be considered by you to this extent that is shown by the evidence to show the relationship between Thomas Moran and Gerald Wall.

"This evidence must not be considered by you at all with respect to Barney Grabiec."

In the light of the nature of the testimony and limiting instructions given by the trial judge, we do not believe that the

defendant was so unduly prejudiced as to result in the denial of a fair trial.

Two comments are in order. First, it will be noted that according to the instructions, the jury could consider the challenged evidence to show "intent" by Wall, as well as "a similar method of operation" and the "relationship of Thomas Moran and Gerald Wall." The majority, significantly, does not mention the intent of Wall as justification for admissibility of the evidence. They instead justify its admission for its probative value regarding "the character of the conspiracy and the extent of the involvement of the participants." Second, the instructions attempt to limit the evidence to Wall. The jury was admonished not to consider the evidence of the other "offenses in any respect to Barney Grabiec." However, the effect of this admonition on the jury was, in my judgment, practically nil. This type of limitation when condoned in a conspiracy case is merely a conscience-saving technique and has little or no pragmatic value. For as Mr. Justice Jackson said in his concurring opinion in *Krulewich v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1948): "The naive assumption that prejudicial effects can be overcome by instructions to the jury, *cf.*

*Blumenthal v. United States*, 332 U.S. 539, 559, 68 S.Ct. 248, 92 L.Ed. 154, all practicing lawyers know to be unmitigated fiction. See *Skidmore v. Baltimore & Ohio R. Co.*, 2 Cir., 167 F.2d 54."

The prejudice as well as the entire problem as to Grabiec could have been avoided if the district court had granted Grabiec's pretrial motion for severance which was based on the ground that any evidence of Wall's prior criminal conduct would unduly prejudice him. The denial of the motion constitutes, I believe, an equally valid and alternative basis for reversal.

In sum, I entertain the view that all too often, as in this case, the prosecution is given carte blanche to introduce evidence of prior criminal conduct under the rubric that though such evidence is irrelevant, nonetheless it may be admitted to show intent, motive, design, etc., when upon a strict analysis either the prior conduct is not similar to that charged or there is really no issue which makes the evidence relevant. It seems to me that we have tended to forget the salutary justification for the exclusionary part of the rule and that it is in danger of being obliterated by the exceptions.*

---

* Professor Wigmore in his treatise on evidence quotes from a number of cases delineating the purpose of the rule. Two are illustrative:

1921, Bricken, P. J., in *Dennison v. State*, 17 Ala.App. 674, 88 So. 211 (larceny of an automobile): "The rule, which requires that all evidence which is introduced shall be relevant to the guilt or the innocence of the accused, is always applied with considerable strictness in criminal proceedings. The wisdom and justice of this, at least from the defendant's standpoint, are self-evident. The defendant can with fairness be expected to come into court prepared to meet the accusations contained in the indictment only, which in this case was the larceny of the Dodge automobile. On this account, all the evidence offered by the State should consist wholly of facts which were within the range and scope of the allegations contained in the indictment upon which he is being tried. The evidence introduced over the defendant's objection relating to other offenses than that charged in the indictment no doubt alarmed the suspicions of the jury, or at least it may have had that effect, and inclined them the more readily to believe in the guilt of the defendant of the offense charged, and rendered the jury less inclined to listen or give proper weight and consideration to whatever was offered or said in his defense. For it is well known, in fact a matter of common knowledge, that the large majority of persons of average intelligence are untrained in logical methods of thinking, and are therefore prone to draw illogical and incorrect inferences and conclusions without foundation. It is also a matter of common knowledge that from such persons jurors are selected. And like others they will very naturally believe that a person is guilty of the offense with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally heinous character. So, as before stated, the general rule in this connection forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of the offense for which he is on trial." 1 Wigmore § 194, at 649 (3d ed. 1940).

1873, Allen, J., in *Coleman v. State*, 55 N.Y. 81: "A person cannot be convicted of one offence upon proof that he committed anoth-

I would reverse and remand for a new trial.

er, however persuasive in a moral point of view such evidence may be. It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, or indeed of any character. But the injustice of such a rule in courts of justice is apparent. It would lead to convictions upon the particular charge made by proof of other acts in no way con-nected with it, and to uniting evidence of several offences to produce conviction of a single one." 1 Wigmore § 194, at 648 (3d ed. 1940).