Charles E. HAILES, Appellant,

v.

UNITED STATES, Appellee.

No. 5218.

District of Columbia Court of Appeals.

Argued May 19, 1970.

Decided June 22, 1970.

William J. Garber, Washington, D. C., for appellant.

Warren L. Miller, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry, Barry W. Levine, and Kenneth Michael Robinson, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and FICKLING and NEBEKER, Associate Judges.

FICKLING, Associate Judge:

Appellant was convicted of violation of the Uniform Narcotic Drug Act.[1]  He

---

1. D.C.Code 1967, § 33–402 (possession).

here challenges the correctness of the denial of his motions to suppress certain narcotics seized from his apartment.

At about 1 o'clock in the morning of July 6, 1969, Officer Hartford received a telephone call from a previously reliable informant. The officer was informed that one "Popeye" [2] had received a shipment of approximately a pound of heroin which he had in his apartment in the 1400 block of Saratoga Avenue, N. E., and that, within a couple of hours, he and another known as "Gumdrop" were going to move the heroin to the vicinity of Rhode Island Plaza (a large apartment complex) for the purpose of "cutting and capping" it.

After receiving this information, Officer Hartford contacted an Assistant United States Attorney to obtain a search warrant for appellant's apartment. The Assistant told him that it would take a minimum of 3 hours to obtain a warrant, as no magistrate was then available; he suggested that under the circumstances Officer Hartford should enter the premises without a warrant.

The officer then again spoke to his informant, who stated that appellant and his companion were still in the apartment and that they had guns which they were not afraid to use.

At about 2 a. m., Officer Hartford and six or eight other officers went to the Saratoga Avenue address with the informer, who pointed out appellant's apartment to them. At about 2:30 a. m., the officers went to the door of appellant's apartment, knocked and announced their purpose and, after receiving no response, forcibly entered. Finding the premises unoccupied, a search for the heroin was conducted. It uncovered over 5,268 milligrams of heroin and cocaine and six pistols and ammunition. The officers seized these items and left the building.

They returned at about 5:15 a. m. and saw appellant on the street in front of the building. As they approached him, he said to them, "You kicked in my door and let these vultures in. Now what are you going to do?" He was then arrested.

It is appellant's contention that the search of his apartment for heroin, once it was discovered that no one was present there, was an unreasonable one in violation of his fourth amendment rights. He argues that the reasonable course would have been to secure the premises and obtain a warrant. We are unable to agree, and so we affirm.

Appellant does not attack the propriety of the initial entry into the apartment but argues, in effect, that any exigent circumstances present upon entry abated when the officers discovered that the apartment was empty and that, therefore, the subsequent search for contraband was unreasonable.

We have no doubt that there was probable cause for the issuance of an arrest warrant based on the information Officer Hartford had. We are also convinced that there was sufficient information upon which a search warrant could have been issued for appellant's apartment. Nonetheless, we think that the "principle of urgent need" [3] justified the warrantless entry. Certainly, reliable information received in the early morning hours that a large supply of heroin is to be transported in a few hours from a certain to an uncertain location for processing demands immediate police action to apprehend the suspects. In this case, where no magistrate was available, there existed an urgent need for a warrantless entry to effect their arrest.

The coincident purpose of the entry into the apartment was, of course, to recover the contraband. We know that narcotics traffic in the community today is a very

2. The officer knew that "Popeye" was appellant and that he lived at 1429 Saratoga Avenue, N. E.

3. Dorman v. United States, U.S.App.D.C. (No. 21736 decided April 15, 1970) (en banc).

serious problem. When the officers entered the apartment and discovered it empty, they could not know whether the heroin had yet been removed. It was imperative that they ascertain immediately whether it had been; otherwise, they would have been unable to determine whether further investigation in the area of Rhode Island Plaza was needed. "The [officers] were required to move quickly to * * * obtain the narcotics which could have been easily removed or secreted."[4] Had they failed to act without delay, it would have enhanced the risk of a large quantity of heroin reaching the streets.

We hold that the significant possibility of removal of the contraband was an exceptional circumstance justifying the warrantless entry and search for it.[5]

Appellant's other contention is without merit. We find no error, therefore the judgment is

Affirmed.

4. United States v. Tucker, 380 F.2d 206, 208 n. 1 (2d Cir. 1967).

5. *See id.*