**UNITED STATES of America,
Appellee,**

**v.**

**Rogelio PINO, Appellant.**

**No. 643, Docket 34545.**

United States Court of Appeals, Second Circuit.

Argued March 26, 1970.

Decided Aug. 17, 1970.

Blumenfeld, District Judge, concurred in result and filed opinion.

Jay S. Horowitz, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., and Jack Kaplan, Asst. U. S. Atty., S. D. New York, on the brief), for appellee.

H. Elliot Wales, New York City, for appellant.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and BLUMENFELD, District Judge.*

LUMBARD, Chief Judge:

Rogelio Pino appeals from his conviction for receiving, concealing and facilitating the transportation and concealment of 126 grams of illegally imported heroin in violation of 21 U.S.C. §§ 173 and 174, after a two-day non-jury trial

* Of the District of Connecticut, sitting by designation.

before Judge Frankel. The sole question requiring consideration is whether or not the search and seizure of Pino's five-room apartment in the Bronx, which followed immediately upon his arrest on the night of August 12, 1965, went beyond the permissible limits of a search incident to an arrest. We hold that in view of what was known to the agents when they made the search of the apartment the seizure of heroin in the rear bedroom was properly incidental to the arrest.

Agents Thomas and Gruden followed Pino and one Albert Llanes to an apartment house at 1522 Bryant Avenue where they entered. Agent Thomas saw them go into Apartment 2–A, the only apartment on the rear of the first floor. While Thomas remained in the hallway in front of the apartment door, Gruden went through a door at the end of the public hallway onto an exterior stairway which led to the back yard. By standing on an iron banister on the landing platform of the stairway Gruden could see through an open window into the bathroom of Apartment 2–A.

Thomas could hear conversation in the apartment which indicated that Pino and Llanes were measuring out something which Llanes was to deliver and for which he would receive money. Gruden saw Pino in the bathroom with two trays, one containing glassine envelopes, a strainer and rubber bands, the other tray held two heaps of white powder. Pino mixed the two powders and placed the mixture in the envelopes. Pino took out the tray of filled envelopes and returned with more material. Gruden then rejoined Thomas and they talked over what they had seen and heard.

At 1:00 A.M. the door of the apartment opened and Llanes stepped out. The agents came forward, identified themselves and arrested Llanes. Thomas found on Llanes one glassine envelope containing 20 grams of heroin.[1] The agents also arrested Pino, who was just inside the door in the apartment hallway. Pino told them the narcotics were in the bedroom, and Thomas went to the bedroom and found on the tray which Gruden had seen earlier material which a field test showed consisted of heroin and sugar.

Judge Frankel allowed Pino to present evidence in further support of his pretrial motion to suppress. For this limited purpose Pino testified himself and he called David Zuckerman, a private detective and Mr. and Mrs. Guiterrez, the two occupants of the apartment at the time of trial, March of 1969. Pino testified that the bathroom window was nailed shut so that Gruden could not have seen what he said he did see. The Guiterrezes testified that when they moved in in October 1965 the window was nailed shut. Zuckerman found it nailed shut in November 1968 and he could not see into the bedroom by standing on the railing, as Gruden had testified he had done. Judge Frankel rejected the defendant's evidence as Judge Palmieri had done previously after a hearing in May 1966 at which Pino had offered no proof. The sole claim now made is that the search went beyond the permissible limits of a search incident to an arrest. We do not agree.

We think it was the clear duty of the agents, having seen and heard what they had, to search the apartment and seize the heroin which was illegally concealed in the apartment. Although this search was conducted nearly four years ago and is not governed by the standards set forth in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which has not been given retroactive application, United States v. Mazzochi, 424 F.2d 49 (2 Cir., April 7, 1970); United States v. Bennett, 415 F.2d 1113 (2 Cir. 1969), we believe that the search would have been proper even if it had occurred today.

---

1. Llanes was tried and convicted on count 2 of the indictment, which conviction we affirmed, United States v. Llanes, 398 F.2d 880 (2 Cir. 1968), cert. denied, 393 U.S. 1032, 89 S.Ct. 647, 21 L.Ed.2d 576 (1969).

In view of what was known to the agents there was ample basis and probable cause for the arrest. When the agents arrested Llanes and found a glassine envelope containing the same white powder which had been seen through the bathroom window, they knew that there were more such envelopes in the apartment ready for distribution. There was no sensible alternative available to the agents other than the course they took of immediately searching the entire five-room apartment.

The arrests were made at 1:00 A.M. and many hours would have elapsed before the agents could have found an official to issue a search warrant or could have made the necessary arrangements for the preparation of the papers and their approval by the office of the United States Attorney. The agents could not know what other persons might be operating with Pino and Llanes and what dangers would be risked if one of them established a watch at the apartment while the other proceeded to book and lodge Pino and Llanes for the night and then proceeded to swear out a search warrant much later that morning.

Delay in searching the apartment in this case would not only have been dangerous for the officer left to guard the apartment, but also would have greatly increased the likelihood that the heroin would either be destroyed or even more likely eventually find its way on to the streets. Thus this was a situation where, in the language used by Mr. Justice Stewart in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) "the inherent necessities of the situation at the time of arrest" quoting Mr. Justice Murphy in Trupiano v. United States, 334 U.S. 699, 708, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), required an immediate search of the entire apartment for the narcotics still there.

Although the *Chimel* decisions would in no event be applicable to a search conducted in 1965, see *Mazzochi, supra,* and *Bennett, supra,* we think it clear that nothing in *Chimel* casts any doubt on the propriety of a search which is conducted under circumstances where an immediate and thorough search is imperative. See also concurring opinion of Chief Judge Lumbard, concurred in by Judge Hays in United States v. Lozaw, 427 F.2d 911 (2 Cir., 1970).

The other points raised by the defendant in his *pro se* brief do not merit discussion.

The conviction is affirmed.

BLUMENFELD, District Judge (concurring):

I concur in the result reached by the majority, but on the more limited ground that the scope of the search was permissible under pre-*Chimel* standards.

The fact that Pino was arrested within his apartment distinguishes this case from Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) and Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969). The search within the apartment in which Pino was arrested was sufficiently "confined to the *immediate* vicinity of the arrest," Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (emphasis supplied), and was supported by Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). See also United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).