Raymond L. Wilkes,
J. There is an Ariadne thread of continuity between the ploy of entrance and the propinquity of contraband which wends its labyrinthine way, through the woof and the warp of this multi-faceted, diversely dimensional hearing.
Upon the application of the defendant and the consent of the District Attorney, a joint hearing was held on March 28, 1972 *800 pursuant to GPL 710.60 (subd. 4) in order to determine (1) the admissibility of certain oral implicatory statements as well as a signed and hand-written confession made by the defendant to law enforcement authorities, and (2) the propriety of an alleged unlawful search and seizure. Patrolman Stanley Festa of the Nassau County Police Department Narcotics Bureau was the sole witness for the prosecution, and he opened a veritable Pandora’s box of possibilities with which to conjure.
The following constitutes the court’s findings of fact and conclusions of law :
On October 20,1971 Patrolman Festa was on a tour of duty as a plainclothes officer in the Village of Hempstead, County of Nassau. At approximately 8:45 p.m. he received word from police headquarters to call a confidential informant who had previously worked for the Nassau County Police Department Narcotics Bureau and the District Attorney’s office, and had furnished information which had led to arrests. The witness had known this informant for approximately 1% months prior to the above date and had received information from him on two prior occasions, although no criminal charges or arrests had resulted therefrom. He called the informant and was advised that a pot party was in progress at 95A Ormond Avenue, Hemp-stead, New York, and that a large quantity of marijuana was to be distributed there that evening.
Armed with that information, the witness proceeded forthwith to the afore-mentioned address accompanied by several other police officers. Upon arrival there, Patrolman Festa knocked on the front door. After a few minutes the defendant came to the doorway and opened the inside door but kept the outer screen door locked. Patrolman Festa said “ I just hit a ear”, whereupon the defendant opened the screen door and the officer detected the distinctive odor of burning marijuana. He then stepped between the two doors, flashed his badge, identified himself and proceeded into the house with his brother officers.
Patrolman Festa immediately asked to be taken to the defendant’s room, and he and the other officers followed the defendant upstairs. No search was conducted on the second floor.
A door preceded a short flight of steps leading from the second floor to the defendant’s attic bedroom, and from the open doorway leading to that bedroom the witness saw five people seated on a bed. He entered the room and observed a trunk next to the bed on top of which were a number of hash pipes, several “ roaches ” (the ends of marijuana cigarettes), and a *801 quantity of marijuana in a clear plastic bag. Next to the bed were two scales and several empty plastic bags. The officer placed the defendant and the five others under arrest and proceeded to search the immediate area in that room. Upon observing a locked green valise adjacent to the bed, Patrolman Festa asked the defendant if he had the key to it, and the defendant replied that he did not. The officer then said “ I will have to open it anyway — it would be easier if you gave me the key.” The defendant then replied “ All right, you got me. It’s all mine. Nobody else here has anything to do with it. The key is in the cardboard box.” The officer thereupon opened the valise, found nine bricks of what appeared to be marijuana, and placed the defendant under arrest for possession thereof.
It then appeared that the defendant had been baby sitting with his sister’s children, which necessitated the witness remaining with the defendant for approximately an hour and a half while the children’s parents were contacted and returned home. During this period although the defendant was under arrest, absent any “ Miranda Eights ”, he conversed with Officer Festa.
The witness recalled that in response to an inquiry relative to his source of supply the defendant made no reply, but he did state that he had invited several friends over for a party that evening.
The defendant was ultimately taken to Nassau County police headquarters where he was advised by Patrolman Festa of his “ Miranda Eights ” for the first time. The officer then asked if the defendant had understood these “ Eights ”, and the defendant replied affirmatively, waived same and made an oral statement.
The defendant then proceeded to reduce his oral statement to a writing, wherein he recited the “ Miranda Eights ”, waived the presence of counsel, admitted the possession of the marijuana, exculpated his friends, and signed the statement in the presence of Patrolman Festa.
Prior to the foregoing, Patrolman Festa had been assigned to the Narcotics Bureau for 2% years, and had received advanced training in narcotics at the Nassau County Police Academy. During the period of his assignment to the Narcotics Bureau, he made over 200 narcotic arrests.
The court finds that Patrolman Festa did not act improperly when he used the ploy of having “ just hit a car ” in order to induce the defendant to open the front door. ‘ ‘ It has been recognized that the police, in order to obtain evidence, must at times use ‘ Artifice and stratagem ’, Sorrells v. United States *802 (287 U. S. 435, 441 [1932]), and 1 stealth and strategy ’, Sherman v. United States (356 U. S. 369, 372 [1958]).” (People v. Lowery, 43 Misc 2d 1084, 1085.)
The court further finds that Patrolman Festa did detect a distinct odor when the defendant opened the outside door to the premises, and that he had sufficient expertise to recognize and identify it as burning marijuana. The message from the informant created a suspicion — which olfactory observation elevated to the plateau of probable cause sufficient to sustain the belief that a crime was being committed at 95A Ormond Avenue. The court therefore finds that the officers were warranted in entering the premises.
The discovery in open view of the hash pipes, “roaches”, marijuana and distribution paraphernalia more than amply justified the arrest of the defendant and his visitors for possession of contraband and warranted the immediate seizure thereof. (Harris v. United States, 390 U. S. 234.) The compellingly continuing search which ensued was proper to the point where the contrary would have bordered upon duty dereliction. Events having initially confirmed the informant’s reliability, it was most reasonable and indeed appropriate police procedure thereafter, considering the ambiance of the atmosphere, to exercise every conceivable effort in order to locate the large quantity of marijuana the informant believed to be present. The presence of the two scales and the plastic bags arranged as if in readiness for distribution, supported the suspicion and raised the likelihood to a reasonable certainty that a substantial amount of marijuana was probably in the immediate area of the arrest. The presence of the locked valise so proximate to the suspects as well as distribution equipment justified the reasonable and ultimately successful search relative to the contents thereof. Said search, so insistently incident to this lawful arrest, was by no manner or means in violation of the guidelines enumerated in Chimel v. California (395 U. S. 752). (See, also, United States v. Pino, 431 F. 2d 1043.)
The spontaneous, unsolicited, friend-exculpating, oral admission made by the defendant to Patrolman Festa relative to the valise is clearly admissible upon the trial in chief. Although the defendant was in custody, having just been arrested, this incident is not within the guidelines of Miranda v. Arizona (384 U. S. 436). The officer, understandably desirous of determining the contents of the locked valise, inquired as to the existence of a key. The defendant in a, to him, laudable endeavor to protect his friends, volunteered the information that he was the sole *803 owner of its contents. (See People v. Cerrato, 24 N Y 2d 1, 9; People v. Torres, 21 N Y 2d 49, 54.)
The conversation between the defendant and Patrolman Festa while they waited in the kitchen for the return of the defendant’s sister resulted in several statements by the defendant of an inculpatory nature. These statements are not admissible upon the trial. (Miranda v. Arizona, 384 U. S. 436, supra.)
On the other hand, however, the handwritten, signed confession of the defendant is admissible upon the trial of this indictment. The court finds that the defendant knowingly and intelligently waived his constitutional rights prior to writing and signing said statement, that he was not physically abused, harassed or threatened, and that no improprieties were employed in order to induce him to make his written confession. Nor was said written statement faulted by the statements held herein to be inadmissible. (People v. Tanner, 30 N Y 2d 102.) The primal motivation for the defendant’s written statement was his desire to exculpate his guests. Exculpating them permitted him the privilege of inculpating himself
Accordingly, (1) the defendant’s motion to suppress the products of an alleged unlawful search and seizure is denied, and (2) the defendant’s motion to suppress certain statements is granted solely to the ektent that the oral statements made in the kitchen to Patrolman Festa are hereby suppressed. In all other respects the defendant’s motion is denied.