**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James DOWELL and Luther Larry Brown, Defendants-Appellants.**

**Nos. 83–1061, 83–1316.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1983.

Decided Jan. 9, 1984.

Certiorari Denied March 26, 1984. See 104 S.Ct. 1683.

Richard F. Walsh, Chicago, Ill., for defendants-appellants.

Dan K. Webb, U.S. Atty., Sheldon T. Zenner, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

On March 12, 1982, agents of the Drug Enforcement Administration (DEA) entered appellants' hotel room without a warrant and seized approximately 700 grams of cocaine later used to convict appellants of several offenses relating to the possession of the controlled substance. Appellant Dowell received a three-year prison sentence to be followed by a five-year period of special mandatory parole, and appellant Brown received a four-year prison term to be followed by parole of the same type and duration. Appellants raise only one issue on appeal. They contend that the trial court should have suppressed the drug evidence used against them because the DEA seized it pursuant to a warrantless entry. The Government responds that the warrantless entry was justified by exigent circumstances. For the reasons stated below, we affirm appellants' convictions.

## I. Facts

In February 1982, James Platts, fearing imminent arrest for his activity as a drug trafficker, made contact with the offices of the DEA in Chicago and agreed to cooperate in a plan to gather evidence against suspected drug suppliers James Dowell and Luther Larry Brown, two men with whom Platts had had prior dealings. On February 26, DEA agent Bob Irwin directed Platts to finalize plans for a $42,000 drug deal with Dowell. According to the plan, Dowell was personally to transport approximately 700 grams of cocaine from Florida to Chicago,

* Robert A. Grant, Senior District Judge of the Northern District of Indiana, sitting by designation.

where Platts was to act as a middleman in a further "sale" to an outside buyer.

On March 12, 1982, Dowell arrived in Chicago and registered along with appellant Brown at the Budgetel Motel in South Holland, Illinois. At about 9:00 p.m. on that day, Dowell telephoned Platts to report his arrival and Platts requested a meeting at the Budgetel with Dowell and the outside buyer to transact the deal and display the cocaine to his buyer. Agent Irwin apparently was to pose as the outside buyer and personally garner evidence against Dowell. Dowell initially approved of the meeting, but later suggested that Platts take his buyer to some location near the Budgetel. Platts agreed to have his buyer rent a hotel room in the area. Apparently, Platts intended to invite Irwin, posing as the outside buyer, to the meeting once it was underway.

Irwin and Platts proceeded to South Holland and telephoned Dowell from the lobby of the local Sheraton Hotel. Dowell instructed Platts to come to room 248 at the Budgetel and purchase the cocaine. Irwin testified that he stayed in the lobby of the Budgetel and instructed Platts to enter room 248, find out who was in the room, see if there were narcotics or weapons there and then return to the lobby under the pretext of needing to consult his outside buyer. According to Irwin, Platts was apprehensive about being exposed as an informant.

Platts entered room 248 where he found Dowell and Brown. Dowell went into the adjoining room and returned with a vinyl shaving kit which he handed to Platts. Platts opened it and took out a plastic bag containing the cocaine. Platts inspected the cocaine, tested it and then Brown and he snorted several sample doses. Dowell then took the bag back, replaced it in the vinyl shaving kit and placed the kit on the bed in room 248. After remaining in the room approximately fifteen to twenty minutes, Platts told Brown and Dowell he had to return to the lobby to telephone his buyer.

Platts found Irwin in the lobby after several minutes of searching. Irwin learned that Dowell and Brown both were present and that they had the cocaine with them. Irwin also learned, counter to all expectations, that Platts had ingested cocaine and was experiencing the drug's effect. According to Irwin, Platts was agitated and fearful that Dowell and Brown would interpret his further absence as evidence of betrayal. Irwin also testified that Platts told him during this lobby conversation that Brown would likely have a gun. Platts testified that he could not recall making such a statement. After debriefing Platts, Irwin had Platts copy down the number of the pay phone in the Budgetel lobby and return to room 248, from where he was immediately to place a call and obtain further instructions. Platts reentered room 248 and told Dowell that he spoke with his buyer and that the buyer was counting his money. Platts delayed calling Irwin because he did not want to awaken suspicion. Meanwhile, Irwin had gathered several agents in the lobby and awaited Platts' call. After fifteen to twenty minutes, when no call was forthcoming, Irwin had a motel security guard unlock the doors to room 248 and adjoining room 246. The DEA agents entered both rooms and apprehended Dowell and Brown as they fled from room 248 to room 246. Inside room 248, the unzippered shaving kit with a plastic bag protruding from the top was on the bed. Irwin performed a field test on the white powder in the plastic bag and confirmed it was cocaine. Later Irwin told Platts he ordered the raid because he feared for Platts' immediate safety.

After the indictment issued, appellants moved to suppress the evidence seized pursuant to the warrantless entry. The motions were referred to a United States magistrate for a hearing. The magistrate recommended to the district judge that the motions be denied because the warrantless entry was justified by exigent circumstances. The district judge adopted the magistrate's recommendation, and both appellants were subsequently convicted at jury trial.

## II. Discussion

The exigent circumstances doctrine is an exception to the Fourth Amendment's protection against searches conducted without prior approval by a judge or magistrate. The doctrine recognizes that "warrantless entry by criminal law enforcement officials may be legal when there is a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978). The doctrine has been applied where law enforcement agents fear imminent destruction of evidence, *Ker v. California,* 374 U.S. 23, 39–40, 83 S.Ct. 1623, 1633, 10 L.Ed.2d 726 (1963), escape of a suspect, *Warden v. Hayden,* 387 U.S. 294, 298–300, 87 S.Ct. 1642, 1645–1646, 18 L.Ed.2d 782 (1967), and grave danger to their lives or the lives of others, *id.* Since the doctrine is an exception to the ordinary Fourth Amendment warrant requirement, the Government has the burden of showing that the warrantless entry fits within the exception. *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). Moreover, this court maintains that law enforcement officials may not deliberately wait for exigent circumstances to arise and then exploit the exception to justify warrantless entry. *United States v. Berkwitt,* 619 F.2d 649, 654 (7th Cir.1980). Finally, in applying the doctrine, an objective standard governs the reasonableness of law enforcement officials' belief that exigent circumstances have arisen. *See Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968); *Root v. Gauper,* 438 F.2d 361 (8th Cir.1971).

Appellants argue that there is an insufficient factual basis in this case to support finding exigent circumstances. The magistrate and the district judge relied on four principal facts to find exigent circumstances. First, Platts' role as undercover informant was potentially subject to exposure. Second, Platts failed to follow his instruction to telephone immediately after returning to room 248. Third, Platts was under the influence of cocaine. Fourth, it was likely that there were guns in the room. The first three facts are firmly established in the record. The fourth fact is not as well established. Although Irwin testified that Platts revealed to him the presence of guns in the room during their lobby conversation, Platts testified he could not recall any discussion in the lobby concerning guns. Appellants argue that the magistrate mechanically adopted Irwin's version of what transpired in the lobby and that reliance on the fourth fact casts doubt on the finding of exigent circumstances.

Appellants' argument fails for two reasons. First, the district judge made a de novo review of the magistrate's determination and also concluded that Irwin was more credible than Platts. Absent inherent improbability, this court will not disturb the district court's finding on the credibility issue. *See United States v. Grabiec,* 563 F.2d 313 (7th Cir.1977). Second, reliance on the fourth fact is not vital; we believe that the first three facts taken alone would lead a man of reasonable caution to conclude that entry without delay was essential. This was a drug deal involving several hundred grams of cocaine and tens of thousands of dollars. The results of betrayal were severe and the consequences of Platts' exposure potentially gruesome. The position of Platts was inherently dangerous, and his failure to telephone Irwin together with his state of impaired mental agility gave Irwin sufficient reason to fear for Platts' immediate safety.[1]

The Eighth Circuit recently faced a case bearing factual similarity to the instant case. In *United States v. Williams,* 633 F.2d 742 (1980), the DEA provided an informant with fake cocaine, which she was to

---

1. Counsel for appellants stated in oral argument that there are established procedures in the involved jurisdiction which enable law enforcement officials to obtain a warrant by telephone when circumstances do not permit a formal appearance. In light of the pressing need for rapid action in this case, the failure to attempt to obtain a telephone warrant is not sufficient to take the entry out of the exigent circumstances exception, although the availability of a telephone warrant is a factor to be weighed.

sell to a drug trafficker at a public airport; DEA agents monitoring the scene intended to arrest the trafficker when he exchanged his money for the fake cocaine. The trafficker, however, was unwilling to complete the sale until he tested the "cocaine" at a location distant from the airport. The informant, seeking to avoid suspicion, agreed to drive off with the trafficker to defendant's house. The DEA was unprepared for this turn of events, which left the informant in an unmonitored setting where she ran a substantial risk of exposure. DEA agents later located the informant's car adjacent to defendant's house and entered the house without securing a warrant. The Eighth Circuit found the entry justified because of the risk of exposure and the prior violence of the drug trafficker. We agree with the Eighth Circuit's analysis and find that the danger to the informant in the instant case appeared even more acute because his promised telephone call failed to materialize.

Appellants do not claim, and we do not find that the DEA deliberately waited for dangerous circumstances to arise or otherwise exploited the exigent circumstances exception. Accordingly, the warrantless entry into the hotel room did not constitute a Fourth Amendment violation. Since the entry was within constitutional bounds, the DEA agents lawfully seized the cocaine, which lay in open view on the motel room bed. *See Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564 (1971).

## CONCLUSION

Having considered all the arguments urged by the parties to this appeal, we conclude that the motion to suppress use of the cocaine as evidence at trial was properly denied, and appellant's convictions accordingly are

AFFIRMED.