[No. 8882–1–III. Division Three. January 19, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. STEPHEN DUANE HALL, ET AL, *Defendants,* DOUGLAS ROLLAND HALL, *Appellant.*

*Richard L. Cease, Public Defender,* and *Gregory Sypolt, Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Virginia Rockwood, Deputy,* for respondent.

RIPPLE, J.*—Douglas R. Hall was convicted by the court of possession of a controlled substance with intent to manufacture and possession of LSD. RCW 69.50.401(a). He was given concurrent sentences of 8 months on the first charge and 90 days on the second. He appeals, contending the

---

*Judge John J. Ripple is serving as a Judge Pro Tempore of the Court of Appeals pursuant to RCW 2.06.150.

court erred in denying his motion to suppress evidence. We affirm.

On April 23, 1986, during surveillance of a marijuana grow operation in a vacated room of the Kaiser Trentwood Aluminum plant in Spokane County, three Kaiser employees, Starley L. Mason, David R. Finch and Stephen D. Hall, were arrested. At approximately 8:30 p.m. Mr. Mason implicated Douglas Hall (brother of Stephen D. Hall) as the supplier of the plants. At 9:45 p.m., sheriff's deputies, accompanied by Mr. Mason, drove to the Hall residence at Vinegar Flats in Spokane. While waiting for Mr. Hall to respond to their knock at the door, a deputy observed, through a dining room window, a bong style marijuana pipe in plain view on a table within the home. When Mr. Hall opened the door, he was advised the deputies had probable cause to obtain a search warrant and they requested consent to search the premises. He was also advised if consent was refused, the deputies would have to secure the premises to avoid the destruction of evidence. Mr. Hall refused consent; the officers did not arrest Mr. Hall but sat with him until 11:15 p.m. when Mr. Hall left. At that time, the deputies secured the house from the outside until the arrival of the search warrant at 12:12 a.m. At no time did they conduct a search.

The affidavit in support of the warrant contained a reference to the bong pipe. Upon execution of the warrant, the deputies found 612 marijuana plants in various stages of growth along with grow equipment, 10 baggies of dried marijuana, an O'Haus triple beam scale and LSD tablets.

Mr. Hall first contends the court erred in failing to suppress the evidence because the affidavit did not meet the requirements of *Aguilar*[1]*Spinelli.*[2] *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984). He contends Mr. Mason

---

[1]*Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

[2]*Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

did not have a sufficient track record of providing information to establish credibility.

■ In *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978) the police arrested suspect Bean on the strength of statements made by Mr. Hawn who had previously been arrested for a drug offense. The court stated, at page 471:

> Because of the strong motive that Hawn had to be accurate in the information he provided the officers, we believe Hawn qualifies as a reliable informant upon whom the police were justified in placing reliance. In addition, since verification of previously furnished details concerning Bean had established their accuracy, the police were justified in stopping the van and arresting Bean when he appeared on schedule.

*See also State v. Smith,* 39 Wn. App. 642, 647, 694 P.2d 660 (1984) (offer of a reduction in charge from felony to misdemeanor gave informant strong incentive to provide accurate information), *review denied,* 103 Wn.2d 1034 (1985); *State v. O'Connor,* 39 Wn. App. 113, 119, 692 P.2d 208 (1984) (admissions against penal interest are relevant indicia of an informant's veracity) (citing *State v. Hett,* 31 Wn. App. 849, 852, 644 P.2d 1187, *review denied,* 97 Wn.2d 1027 (1982); *State v. Lair,* 95 Wn.2d 706, 710, 630 P.2d 427 (1981); *United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971)), *review denied,* 103 Wn.2d 1022 (1985).

Here, Mr. Mason was under arrest at the time he named a specific person at a specific address. He accompanied the officers to identify the residence. His information was corroborated during a separate interview by another codefendant, Mr. Stephen Hall. Mr. Mason also admitted purchasing marijuana plants from Doug Hall, an admission against his penal interest. Finally, the allegations of the informants were corroborated by the presence of the bong pipe. *State v. Jackson, supra* at 445.

■ Mr. Hall next contends the information provided by Mr. Mason was stale—it had been 2 months since Mr. Mason had been present in the house to make a purchase,

citing *State v. Hett, supra.* The test for staleness of the information in an affidavit is common sense. *State v. Petty,* 48 Wn. App. 615, 621, 740 P.2d 879, *review denied,* 109 Wn.2d 1012 (1987); *State v. Hashman,* 46 Wn. App. 211, 217, 729 P.2d 651 (1986), *review denied,* 108 Wn.2d 1021 (1987); *Hett,* at 852 (citing *State v. Worland,* 20 Wn. App. 559, 582 P.2d 539 (1978)). The tabulation of the number of days is not the deciding factor; rather, it is only one circumstance to be considered with all the others, including the nature and scope of the suspected activity. *Hett,* at 852 (citing *State v. Higby,* 26 Wn. App. 457, 460, 613 P.2d 1192 (1980)). Here, it was reasonable to believe the established grow operation was still in existence because of the number of plants found at Kaiser and Mr. Mason's comment regarding the size of the plants remaining at the house.

Mr. Hall also argues the observation of the pipe was not within the plain view exception to the warrant requirement because the house was located in an isolated area some distance from a public roadway and its furnishings obscured the vision of an officer peering through the window.

The plain view doctrine, announced in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), requires the police officer to have a prior justification for an intrusion in the course of which he inadvertently discovers incriminating evidence. While there is no indication in the record as to the location of the dining room window, it was reasonable for the police to provide backup protection for those officers at the front door. Additionally, the trial court specifically found the police were able to observe the pipe through the window; no error has been assigned to this finding, thus, it is a verity on appeal.

The most troubling issue before this court is the question of the warrantless entry to secure the home because of exigent circumstances involving the destruction of evidence. The State argues and the trial court found the possibility of a phone call being made by Mr. Hall's brother from the jail after his arrest was sufficient to justify the warrantless entry.

■ In *Bean,* a house was entered and secured prior to obtaining a search warrant. After entry, the officers observed marijuana and pipes for smoking it in plain view in the living room. After the warrant was obtained, the officers seized other drugs found throughout the house. In suppressing the evidence, the court noted, at page 472:

> Subject only to a few exceptions, a search without a warrant is per se unreasonable under the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). "The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.'" (Footnotes omitted.) *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Here the State contends exigent circumstances existed.
>
> The totality of circumstances said to justify a warrantless securing or search of a house under the doctrine of exigent circumstances will be closely scrutinized. This, we feel, is the correct rule in view of the practicable alternative available in the form of the telephonic warrant. CrR 2.3(c).

(Footnote omitted.) *See also Mincey v. Arizona,* 437 U.S. 385, 393, 57 L. Ed. 2d 290, 300, 98 S. Ct. 2408, 2413 (1978). "'[A]n objective standard governs the reasonableness of law enforcement officials' belief that exigent circumstances have arisen.'" *United States v. Patino,* 830 F.2d 1413, 1415 (7th Cir. 1987) (quoting *United States v. Dowell,* 724 F.2d 599, 602 (7th Cir.), *cert. denied,* 466 U.S. 906, 80 L. Ed. 2d 157, 104 S. Ct. 1683, 467 U.S. 1216, 81 L. Ed. 2d 367, 104 S. Ct. 2661 (1984)). When exigent circumstances are advanced, it is appropriate to review the officers' conduct during the entire period from the moment they had a right to obtain a warrant and not merely from when they knocked on the door. *United States v. Rosselli,* 506 F.2d 627, 630 (7th Cir. 1974). While recognizing this is federal authority construing the fourth amendment to the United States Constitution, our court has noted article 1, section 7 of the Washington

State Constitution provides heightened protection. *State v. Chrisman,* 100 Wn.2d 814, 818, 676 P.2d 419 (1984).

Federal courts have enumerated general factors which should be considered to determine whether exigent circumstances are present:

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant, *compare* United States v. Pino, 431 F.2d 1043, 1045 (2d Cir. 1970), *with* Niro v. United States, 388 F.2d 535 (1st Cir. 1968); (2) reasonable belief that the contraband is about to be removed, United States v. Davis, 461 F.2d 1026, 1029–1030 (3d Cir. 1972); Hailes v. United States, 267 A.2d 363 (D.C.C.A.1970); (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, United States v. Pino, 431 F.2d at 1045; (4) information indicating the possessors of the contraband are aware that the police are on their trail, United States v. Doyle, 456 F.2d 1246 (5th Cir. 1972); and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic," United States v. Manning, 448 F.2d 992, 998–999 (2d Cir. 1971); United States v. Davis, 461 F.2d at 1031–1032.

*United States v. Rubin,* 474 F.2d 262, 268–69 (3d Cir.), *cert. denied,* 414 U.S. 833, 38 L. Ed. 2d 68, 94 S. Ct. 173 (1973). Here, we find no conclusive evidence of any of these factors.

After reviewing the police reports and the transcript of the hearing on the motion to suppress, there is no reason to believe the officers were concerned about anything other than one of those arrested calling Mr. Hall. The police had control over those arrested; they could have dialed a lawyer if one was required and let the arrestee speak to him. The proposal that they allow unlimited telephone calls from the jail is a practice, not a legal requirement and, could have been restricted to *none* while they were attempting to get the search warrant for Mr. Hall's residence.

In *Rosselli,* federal agents observed a vehicle make two stops at different apartments and deliver the contents of a

box to each. At the second apartment, the agents entered and arrested the occupants for delivery of marijuana. The agents then returned to the first apartment but left a young lady alone where the arrest had been made. Upon their return to the first apartment, they announced themselves at the door, heard a scuffling movement, someone engaging the front door chain lock, and a voice calling "Don't open the door for anybody". The agents kicked open the door and entered. *Rosselli,* 506 F.2d at 628. The government attempted to justify its action because of a risk the young lady might telephone a warning and that the reaction to the door knock indicated the marijuana was about to be destroyed or removed.

*Rosselli* concluded the possibility of a phone call was not a sufficient reason to justify the warrantless entry, and stated, at page 629:

> In *United States v. Rubin* . . . the person who was arrested a few minutes before the warrantless search had yelled to gas station attendants and spectators, "Call my brother." In that situation there was no possible way in which the agents could have prevented such a call and they were entitled to assume that someone would, in fact, make it. Here, neither the Andersons nor defendant's brother made any such request of Miss Ackley; moreover, if the risk of such a call created an apparent emergency, it could have been avoided by leaving an agent with Miss Ackley and the Anderson children while a warrant was being secured.

(Footnote omitted.) *See also State v. Martin,* 139 Ariz. 466, 679 P.2d 489 (1984). The exigent circumstances cannot be created by the police themselves. *United States v. Patino,* 830 F.2d at 1417; *United States v. Dowell, supra; United States v. Thompson,* 700 F.2d 944, 950 (5th Cir. 1983); *Rosselli,* 506 F.2d at 629 n.6 (citing *United States v. Mapp,* 476 F.2d 67 (2d Cir. 1973); *United States v. Evans,* 481 F.2d 990 (9th Cir. 1973)).

*Rosselli,* 506 F.2d at 630, further states:

> We do not suggest that the emergency which did develop was contrived by the agents. They had a right to

pursue their investigation by seeking voluntary cooperation from a suspect. But certainly the emergency which did ensue was foreseeable. Moreover, this type of situation may reoccur repeatedly and might lend itself to too easy a by–pass of the constitutional requirement that probable cause should generally be assessed by a neutral and detached magistrate before the citizen's privacy is invaded. *See* Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564. This is the kind of situation in which there is an especially high risk that error may be committed even when officers are acting in the best of faith.

Here, the police made the Kaiser arrests at approximately 6 p.m. Mr. Hall was initially implicated at 8:30 p.m.; his address was confirmed and the house secured at approximately 9:45 p.m. At 11 p.m. the police prepared the affidavit used to obtain the warrant which was granted at 11:41 p.m. and executed at 12:12 a.m. During the entire time period, Mr. Hall's brother and codefendant were in the control of the authorities, who could have monitored outgoing calls until the warrant had been obtained. The facts which comprised the urgent circumstances were "'simply too slender a reed to support the seizure in this case.'" *Martin,* at 474 (quoting *Reid v. Georgia,* 448 U.S. 438, 441, 65 L. Ed 2d 890, 894, 100 S. Ct. 2752, 2754 (1980)). *See also State v. Ramirez,* 49 Wn. App. 814, 746 P.2d 344 (1987) (charge of misdemeanor does not justify warrantless entry of hotel room by exigent circumstances). Thus, we conclude error was committed.

■ We next address whether the evidence obtained after the warrant was executed must be suppressed. The question is determined by the independent source doctrine as explained in *Murray v. United States,* __ U.S. __, 101 L. Ed. 2d 472, 108 S. Ct. 2529, 2533 (1988):

Almost simultaneously with our development of the exclusionary rule, in the first quarter of this century, we also announced what has come to be known as the "independent source" doctrine. *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). That doctrine, which has been applied

to evidence acquired not only through Fourth Amendment violations but also through Fifth and Sixth Amendment violations, has recently been described as follows:

"[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

Here, the officers did not engage in any search until after the warrant was obtained. The only contributing factor mentioned in the affidavit to secure the warrant was the bong pipe. However, it was observed prior to the illegal entry so remains untainted by it.

We conclude the decision to seek the warrant had been made prior to the trip to Vinegar Flats and the purpose of the trip was to confirm Mr. Hall's address; thus, the basis for the search warrant was independent of the illegal entry. Though we conclude the police committed an act in violation of the constitution, it did not contribute to the obtaining of any evidence; the preparation of the warrant was under way and there is no showing an unreasonable time elapsed before the warrant was executed. Thus, the evidence secured pursuant to the warrant was admissible.

Finally, did the trial court err when it held the two crimes were not part of the same course of conduct under RCW 9.94A.400?

RCW 9.94A.400 provides that two or more crimes requiring the same criminal intent, committed at the same time and place and involving the same victim will be construed as encompassing the same criminal conduct and counted as one crime for purposes of determining the offender score. The trial court ruled the crimes here were not the same criminal conduct as they were not part of a recognizable

scheme or plan and neither was done to complete the other. While the criminal objective was identical (possession), each crime was distinct and separately realized upon the completion of each incident. *State v. Calloway,* 42 Wn. App. 420, 424, 711 P.2d 382 (1985). We find no error.

The decision of the trial court is affirmed.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 112 Wn.2d 1016 (1989).