**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  56179-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| WILLIAM HOWARD WITKOWSKI, | |
| Appellant. | |

WORSWICK, J. — William Howard Witkowski appeals, for a second time, his convictions and sentence for multiple felonies.[1]  Following his first appeal, we held that *Ferrier*[2] warnings were required prior to law enforcement's warrantless entry onto the curtilage of his property and remanded to the trial court for excision of the subsequent search warrant affidavit and to determine whether probable cause remained for the search warrant following that excision.  The trial court complied with our remand instructions and concluded that the excised affidavit contained probable cause to support the search warrant.

---

[1] Witkowski appeals his convictions for one count of unlawful possession of a controlled substance with intent to deliver (heroin), one count of unlawful possession of a controlled substance with intent to deliver (methamphetamine), twelve counts of first degree unlawful possession of a firearm, one count of unlawful possession of a controlled substance (oxycodone), and seven counts of unlawful possession of a stolen firearm. Witkowski does not appeal his conviction for one count of third degree defrauding a public utility.

[2] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

Witkowski appeals that determination. He argues that the search warrant authorizing the search of his property was based on stale evidence, and therefore, the drug and firearm evidence should have been suppressed as fruit of the poisonous tree. We disagree and affirm.

FACTS

In May 2015, Ohop Mutual Light Company shut off power to Witkowski's property as a result of non-payment. On October 6, 2015, an engineering coordinator for Ohop went to the property in response to a customer reporting an illegal power hookup on the property and observed that the original power meter belonging at the address was laying on the ground. A stolen power meter had been installed in its place. The engineer took detailed photos of the illegal power hookup, the stolen meter providing power to the residence, and the original meter before he left the property to investigate records at the Ohop office. When he returned to the property later that day, he discovered that the stolen power meter had been removed.

Twenty days later on October 26, 2015, law enforcement went to the property. Officers made contact with Tina Berven who also resided at the property and told her they needed to speak with her and Witkowski about the theft of power. During that visit, Berven opened a gate in a fence and allowed the officers onto the property. *State v. Witkowski*, No. 53412-6-II, slip op. at 3-4 (Wash. Ct. App. Apr. 6, 2021).[3] Once on the property, the officers observed a power pole with no power meter hooked up and a meter laying at the base of the pole. *Witkowski*, slip op. at 4. A few days later, law enforcement requested a search warrant for the stolen power meter

---

[3] Unpublished, https://www.courts.wa.gov/opinions/pdf/D2%2053412-6-II%20Unpublished%20Opinion.pdf

2

based on the information from the Ohop engineer and information from the officers' October 26 visit.

Officers executed the warrant on October 29 and discovered heroin, a scale, oxycodone pills, methamphetamine, and crib notes in a vehicle. *Witkowski*, slip op. at 5. They also found evidence suggesting there may be controlled substances and illegal firearms on the premises. *Witkowski*, slip op. at 5. Based on information obtained when executing the first search warrant, law enforcement requested and obtained a second search warrant related to the suspected illegal drugs and firearms. *Witkowski*, slip op. at 5. During the execution of the second search warrant, law enforcement seized numerous firearms. *Witkowski*, slip op. at 5.

The State charged Witkowski with multiple felonies arising from the drugs and firearms evidence seized during the execution of the two search warrants. *Witkowski*, slip op. at 5. Witkowski moved to suppress the evidence, arguing that it should have been suppressed because the law enforcement deputies failed to give *Ferrier* warnings before entering the property on October 26. *Witkowski*, slip op. at 5. The trial court denied his motion, and a jury found Witkowski guilty as charged. *Witkowski*, slip op. at 6.

Witkowski appealed, and we held that the trial court erred by concluding that *Ferrier* warnings were not required prior to the sheriff's deputies entering the curtilage of Witkowski's property prior to obtaining a search warrant. We remanded to the trial court to determine which portions of the search warrant affidavit should be excised and to determine whether sufficient probable cause existed for the search warrant following that excision. *Witkowski*, op. at 10.

At a hearing on the matter, the State and Witkowski largely agreed on the appropriate excisions to be made. The trial court adopted the State's proposed excisions. Witkowski argued

that the remaining information in the warrant affidavit was stale, but the trial court disagreed. The trial court concluded that after excising the warrant affidavit in accordance with our remand instructions, the remaining facts established probable cause to search the property and outbuildings.

Witkowski appeals.

## ANALYSIS

Witkowski argues that the evidence supporting most of his convictions should have been suppressed as fruit of the poisonous tree because it was gathered during the execution of a search warrant that was based on stale information and therefore not supported by probable cause. We disagree.

## I. APPEALABILITY

As an initial matter, the State argues that we should decline to address the merits of Witkowski's argument because he failed to raise the staleness issue in his previous appeal. "The general rule is that a defendant is prohibited from raising issues on a second appeal that were or could have been raised on the first appeal." *State v. Mandanas*, 163 Wn. App. 712, 716, 262 P.3d 522 (2011). This limitation extends to issues "of constitutional import." *Mandanas*, 163 Wn. App. at 717. At our discretion, we may nonetheless address issues not previously raised in an earlier appeal where, on remand, the trial court exercised its independent judgment in reviewing and ruling on the issue. *State v. Wheeler*, 183 Wn.2d 71, 78, 349 P.3d 820 (2015).

Witkowski's prior appeal was limited to whether law enforcement failed to provide *Ferrier* warnings as required prior to entering the curtilage of his property.[4] We held that they were and remanded to the trial court to determine which portions of the search warrant should be excised, and whether probable cause existed for the search warrant following that excision. *Witkowski*, slip op. at 10. In our opinion, we specifically explained, "[b]ecause the trial court has not previously considered staleness, Witkowski will be able to make this argument on remand." *Witkowski*, slip op. at 9. On remand, Witkowski argued, and the trial court exercised its judgment regarding staleness, so we consider the merits of Witkowski's argument.

## II. PROBABLE CAUSE

A.    *Standard of Review*

Witkowski and the State disagree as to our standard of review. Witkowski characterizes the trial court's actions on remand as a suppression hearing and contends that we should review the trial court's determination of probable cause de novo. The State responds that our review is for abuse of discretion.

We review the issuance of a search warrant for abuse of discretion, giving great deference to the issuing judge or magistrate. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). But following a suppression hearing, we review a trial court's assessment of probable cause de novo. *Neth*, 165 Wn.2d at 182. This is because at a suppression hearing, the trial court acts in an appellate-like capacity and its review is limited to the four corners of the warrant affidavit. *Neth*, 165 Wn.2d at 182.

---

[4] Witkowski also argued for the first time on appeal that the second search warrant was invalid, but we declined to address that issue because Witkowski failed to demonstrate a manifest constitutional error.

Although in this instance the trial court's determination of probable cause did not occur directly following a motion to suppress, its review was similarly appellate-like. The trial court did not engage in fact-finding or hear from witnesses. Rather, its assessment of probable cause was limited to reviewing the four corners of the excised warrant affidavit—as it would be in a suppression hearing. Accordingly, the trial court's assessment of probable cause is a legal conclusion we review de novo.

B.      *Staleness*

Witkowski argues that the information in the warrant affidavit was stale and insufficient to show probable cause. He argues the information was stale because of the delay between the report by the Ohop Mutual employee and the execution of the warrant and because the Ohop Mutual employee had reported that the stolen power meter was no longer at the hookup site. We disagree.

We apply a commonsense analysis in reviewing warrant affidavits. *Neth*, 165 Wn.2d at 182. And all doubts are resolved in favor of the warrant's validity. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). "A search warrant should be issued only if the application shows probable cause that the defendant is involved in criminal activity and that evidence of the criminal activity will be found in the place to be searched." *Neth*, 165 Wn.2d at 182. "It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The magistrate is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *Maddox*, 152 Wn.2d at 505.

In reviewing the issue of staleness in a probable cause determination, we consider the information presented to the issuing magistrate and look to the totality of the circumstances to

evaluate whether the facts underlying the search warrant are stale. *Maddox*, 152 Wn.2d at 506. Information is not stale "if the facts and circumstances in the affidavit support a commonsense determination that there is continuing and contemporaneous possession of the property intended to be seized." *Maddox*, 152 Wn.2d at 506. In evaluating staleness, length of time is only one factor we consider along with other relevant circumstances, including the nature and scope of the suspected criminal activity. *See Maddox*, 152 Wn.2d at 506 (observing the majority rule in other jurisdictions that the staleness determination depends on the nature of criminal activity, the length of the activity, and the nature of the property to be seized).

In *State v. Hall*, the court considered whether a two-month lapse between the informant's tip and execution of the search warrant rendered the tip stale; there, the informant had reported his earlier observations of the defendant's home marijuana grow operation. 53 Wn. App. 296, 299-300, 766 P.2d 512 (1989). The court found that probable cause existed because it was reasonable to believe that the grow operation was still in existence based on the number of marijuana plants already found and the informant's description of the size of the marijuana plants in the home. *Hall*, 53 Wn. App. at 300.

Witkowski attempts to distinguish this case from *Hall* by emphasizing the Ohop Mutual employee's report that the stolen power meter was no longer visible when he returned to the property on October 6, but his attempt falls short. Witkowski contends that this case is more similar to *Maddox* where the day before law enforcement executed its search warrant, the informant was told Maddox was "out" of the methamphetamine that law enforcement suspected would be found during its search. Br. of Appellant 17 (citing *Maddox*, 152 Wn.2d at 503-04).

Unlike the methamphetamine in *Maddox*, the evidence expected to be found at Witkowski's property was not transitory by nature. Witkowski argues that no evidence showed the stolen power meter remained on the premises, but ignores that there was also no evidence to suggest that it had been sold or removed as opposed to simply placed out of sight after the Ohop Mutual employee visited. Moreover, given the ongoing nature and scope of the suspected criminal activity—theft of power for over five months—it is not unreasonable to suspect that evidence of that activity remained on the property.

We apply a commonsense analysis, and common sense supports the reasonable inference that the stolen power meter or other evidence of power theft remained on the property. Under the totality of the circumstances, we hold that the trial court did not err by concluding that probable cause existed to believe Witkowski was involved in criminal activity and that evidence of that criminal activity would be found on his property.

### III. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In a Statement of Additional Grounds for Review, Witkowski appears to take issue with the investigating law enforcement officers who searched his property. Although RAP 10.10 does not require an appellant to refer to the record or cite relevant authority, he is required to inform of us of the nature and occurrence of the alleged errors. The sentiments in Witkowski's statement of additional grounds are too vague to allow us to identify any alleged legal error and we do not consider them further.

We affirm.

No. 56179-4-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, J

We concur:

Glasgow, C.J.

Price, J.